IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

HUNTINGTON DIVISION

**RICO RODRIGUEZ ALLEN**,

    **Movant,**

v.                                                      Case No. 3:19-cv-00546
                                                                 Criminal Case No. 3:18-cr-00033

**UNITED STATES OF AMERICA**

    **Respondent.**

**PROPOSED FINDINGS AND RECOMMENDATIONS**

Pending before the Court are Movant's *pro se* Motion and Amended Motions to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody pursuant to 28 U.S.C. § 2255. (ECF Nos. 50, 72, 74 ).[1] The United States has filed two Responses, asking the Court to deny the Motions. (ECF Nos. 61, 75). This matter is assigned to the Honorable Robert C. Chambers, United States District Judge, and by Standing Order has been referred to the undersigned United States Magistrate Judge for the submission of proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B). Having determined that Movant clearly is not entitled to relief under 28 U.S.C. § 2255, the undersigned **FINDS** no basis for an evidentiary hearing; therefore, Movant's request for an evidentiary hearing, (ECF No. 68), is **DENIED**. Furthermore, the undersigned respectfully **RECOMMENDS** that the presiding District Judge **DENY** Movant's Motion and Amended Motions to Vacate, Set Aside, or Correct Sentence by a

---

[1]The citations in this Proposed Findings & Recommendations are taken from Movant's criminal case: *United States v. Allen*, Case No. 3:18-cr-00033-01 (S.D.W. Va. 2018).

Person in Federal Custody pursuant to 28 U.S.C. § 2255; **DISMISS** this civil action, with prejudice; and **REMOVE** this matter from the docket of the Court.

**I.      Factual and Procedural Background**

On February 21, 2018, Movant Rico Rodriguez Allen ("Allen") was indicted in the United States District Court for the Southern District of West Virginia (the "Sentencing Court") on one count of possession with intent to distribute 50 grams or more of methamphetamine ("Count One"); one count of being a felon in possession of a firearm ("Count Two"); and one count of using or carrying a firearm during and in relation to a drug trafficking crime in violation of 18 U.S.C. § 924(c)(1)(A) ("Count Three"). (ECF No. 1). On May 29, 2018, Allen signed a written agreement with the United States in which Allen agreed to plead guilty to Counts One and Three of the Indictment in exchange for the United States' promise not to file an information pursuant to 21 U.S.C. § 851 and to dismiss Count Two. (ECF No. 30). Allen and the United States stipulated to certain facts and concurred that, under the United States Sentencing Guidelines ("USSG"), Allen's adjusted base offense level on Count One would be 24, and on Count Three, his USSG sentence would be 60 months. (*Id.* at 6). The parties acknowledged their understanding that neither the Probation Office, nor the Sentencing Court, was bound by the parties' calculation of the USSG offense level or sentence range. (*Id.*). Allen agreed to waive his right to seek appellate review of his conviction and sentence, as long as the sentence was below or within the USSG range corresponding to offense level 24, with an additional 60 months for Count Three. (*Id.* at 7). He likewise waived his right to collaterally attack his guilty plea, conviction, or sentence on any ground, except on a claim of ineffective assistance of counsel. (*Id.* at 7).

On June 16, 2018, the Sentencing Court accepted Allen's plea of guilty to Count

One and Count Three of the Indictment, found him guilty of the charges, and scheduled a sentencing hearing on September 17, 2018. (ECF No. 60). At the Sentencing Court's request, United States Probation Officer Michele L. Wentz prepared a Presentence Investigation Report ("PSR"). (ECF No. 42). In the PSR, Officer Wentz calculated Allen's adjusted offense level on Count One to be 24. (*Id.* at 9). With a three-level deduction for acceptance of responsibility, Allen's total offense level on Count One was 21. (*Id.*). Based on Allen's total offense level and Criminal History Category of VI, Officer Wentz calculated Allen's USSG sentence range to be 77 to 96 months of imprisonment on Count One, with a consecutive USSG sentence of 60 months' imprisonment on Count Three. (*Id.* at 17, 26). Allen's statutory minimum sentence was five years in prison, with a statutory maximum of no more than 40-years' imprisonment. (*Id.* at 26).

On November 7, 2020, the Sentencing Court adopted the PSR and entered judgment against Allen, imposing a sentence of 77 months of incarceration on Count One and a consecutive term of 60 months' imprisonment on Count Three, followed by five years of supervised release. (ECF No. 38). Allen did not appeal his sentence, but filed the instant motion under § 2255. (ECF No. 50).

In the motion, Allen raises one ground of ineffective assistance of counsel. Allen claims that his trial attorney, Mr. Rhett Johnson ("Johnson"), improperly advised Allen to plead guilty to Count Three of the Indictment even though the facts did not establish the essential elements of the crime. (*Id.* at 4). Allen asks for an evidentiary hearing and that his conviction on Count Three be vacated. (*Id.* at 12). Allen explained in a supporting memorandum that Johnson had incorrectly advised Allen that the mere possession of a firearm provided justification for a charge under 18 U.S.C. § 924(c)(1)(A). (*Id.* at 13). According to Allen, Johnson "never considered or explained that the government would

3

have to prove 'active employment' as an essential element of the charge." (*Id.*). Allen indicated that at the time of his arrest, he was asleep at the wheel of his car, and the firearm was found when law enforcement officers pulled him from the vehicle. (ECF No. 50 at 14-15). Allen reasons that, since he was asleep in his car at the time he possessed the firearm, he could not have actively employed the firearm during and in relation to a drug trafficking crime. Allen attaches a criminal complaint filed in the Magistrate Court of Cabell County, West Virginia, detailing the events surrounding Allen's arrest and noting that the vehicle in which Allen had been sleeping contained two sets of digital scales, four telephones, 100 small baggies, two small heroin presses, and a bullet proof vest. (*Id.* at 18-19).

On August 26, 2019, upon the motion of the United States, the Court ordered Johnson to file an affidavit factually responding to Allen's allegation of ineffective assistance of counsel. Johnson filed the affidavit on September 25, 2019. (ECF No. 57). Johnson states that he has no memory one way or the other as to whether he encouraged Allen to enter into the plea agreement, although Johnson believed the agreement was favorable to Allen and probably would have recommended that course. Johnson indicates that he was concerned Allen would be designated as an armed career offender if the government filed a Section 851 information, a designation that would have increased Allen's statutorily mandated minimum sentence to 15-years' imprisonment. (*Id.*). Johnson agreed with Allen that no discussion occurred between them regarding "active employment" of the firearm, because the government only had to prove that Allen "carried" a firearm during and in relation to a drug trafficking crime, which Johnson believed the government could do. (*Id.*).

Based on Johnson's affidavit, the United States filed a response in opposition to

Allen's § 2255 motion. (ECF No. 61). In the opposition memorandum, the United States concurred with Johnson's opinion that Allen would have received a harsher sentence in the absence of the plea agreement. In addition, the United States argues that Allen admitted the essential elements of the firearms charge during his plea hearing by acknowledging that he had the firearm with him, at least in part, for protection when distributing methamphetamine. (ECF No. 61).

On November 7, 2019, Allen was reminded of his right to reply to the United States' response, (ECF No. 62), and Allen submitted a memorandum in January 2020. (ECF No. 67). In this submission, Allen claims that Johnson "coerced" him into admitting the elements of the firearms charge by "threatening" him with the possibility that he would be designated an armed career criminal. (*Id.*). Allen indicates that he did not understand "the law in relation to the facts," which allowed Johnson to "subtly" pressure Allen into accepting the plea agreement. Allen again requests an evidentiary hearing. (ECF No. 68).

On July 1, 2020, Allen moved the Court for leave to file an amendment to his § 2255 motion. (ECF No. 72). Allen's motion was granted, and his amended motion was considered filed on July 2, 2020. (ECF Nos. 73, 74). In the amendment, Allen alleges that Johnson was also ineffective for failing to pursue a motion to suppress evidence. (ECF No. 74). The United States was given an opportunity to respond to the additional claim raised by Allen, which the United States did on July 28, 2020. (ECF No. 75). In its response, the United States points out that Allen explicitly acknowledged his desire to waive any challenge to the arrest that yielded the evidence against him.

## II.   **Standard of Review**

A motion made pursuant to 28 U.S.C. § 2255 is a collateral attack on a conviction or sentence that was entered in a separate proceeding. To succeed on such a motion, the

movant must prove that the conviction or sentence was imposed in violation of the laws or Constitution of the United States; or the court imposing the sentence lacked jurisdiction; or the sentence exceeded the maximum authorized by law; or the sentence was otherwise subject to collateral attack. 28 U.S.C. § 2255. "A motion collaterally attacking a prisoner's sentence brought pursuant to § 2255 requires the petitioner to establish his grounds by a preponderance of the evidence." *Sutton v. United States of America,* No. CRIM.A. 2:02CR65, Civ.A. 2:05CV91, 2006 WL 36859, at *2 (E.D. Va. Jan. 4, 2006). Consistent with the Rules Governing Section 2255 Proceedings for the United States District Courts ("Rules"), the court should conduct a preliminary review of the motion. *See* Rule 4. The court may then order the respondent to answer the motion and may authorize the parties to conduct discovery; the court may also direct the parties to expand the record as necessary to properly assess the validity of the motion. *See* Rules 5, 6, & 7. Once these steps are completed, the court must review the answer, transcripts, records of prior proceedings, and any other materials submitted to determine whether an evidentiary hearing on the motion is warranted. *See* Rule 8(a). If the movant is clearly unable to state a claim that entitles him to relief, the court may deny the motion without an evidentiary hearing. *Raines v. United States,* 423 F.2d 526, 529 (4th Cir. 1970). Furthermore, "vague and conclusory allegations contained in a § 2255 petition may be disposed of without further investigation by the District Court." *United States v. Dyess*, 730 F.3d 354, 359 (4th Cir. 2013).

### III. Discussion

As indicated, Allen's claims are based on alleged instances of constitutionally deficient performance by his attorney. These claims assert violations of the Sixth Amendment to the United States Constitution, which guarantees every criminal

6

defendant "the right to the effective assistance of counsel." *Strickland v. Washington,* 466 U.S. 668, 680 (1984). Under *Strickland,* a criminal defendant can prove ineffective assistance of counsel by meeting the requirements of a two-pronged test. *Id.* at 687. The defendant carries the burden of satisfying both prongs of the test, and "a failure of proof on either prong ends the matter." *United States v. Roane,* 378 F.3d 382, 404 (4th Cir. 1994).

First, the defendant must show that counsel's representation fell below an objective standard of reasonableness. *Strickland,* 466 U.S. at 687-88. When evaluating counsel's performance under the first prong of *Strickland,* "[j]udicial scrutiny of counsel's performance must be highly deferential." *Id* at 689. The "court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance … [and] that, under the circumstances, the challenged action might be considered sound trial strategy." *Id.* (internal quotation marks omitted). Counsel's performance should be assessed with "a context-dependent consideration of the challenged conduct as seen from counsel's perspective at the time." *Wiggins v. Smith,* 539 U.S. 510, 523 (2003). A counsel's trial strategy devised after investigating the law and facts is "virtually unchallengeable." *Bell v. Evatt*, 72 F.3d 421, 429 (4th Cir. 1995). Moreover, the reviewing court should not allow hindsight to alter its assessment of counsel's performance. *Yarborough v. Gentry,* 540 U.S. 1, 8 (2003) ("The Sixth Amendment guarantees reasonable competence, not perfect advocacy judged with the benefit of hindsight."). Put simply, the inquiry under *Strickland* is "whether an attorney's representation amounted to ***incompetence*** under prevailing professional norms, not whether it deviated from best practices or most common custom." *Harrington v. Richter,* 562 U.S. 86, 88 (2011) (emphasis added).

Second, the defendant must show that he was actually prejudiced by the ineffective assistance of counsel. *Strickland,* 466 U.S. at 687. To establish actual prejudice from counsel's deficient performance in the context of a guilty plea, a "petitioner must demonstrate that his trial counsel's performance fell below an objective standard of reasonableness and 'that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.'" *Burket v. Angelone*, 208 F.3d 172, 189 (4th Cir. 2000) (quoting *Hill v. Lockhart*, 474 U.S. 52, 59 (1985). The petitioner's "subjective preferences ... are not dispositive; what matters is whether proceeding to trial would have been objectively reasonable in light of all of the facts." *United States v. Fugit*, 703 F.3d 248, 260 (4th Cir. 2012). In order to demonstrate prejudice, therefore, a petitioner "must convince [the court] that the decision to go to trial 'would have been rational under the circumstances.'" *Dyess*, 730 F.3d at 361 (quoting *Padilla v. Kentucky*, 559 U.S. 356, 372 (2010)).

In the context of a guilty plea, the court considers whether the plea was constitutionally valid despite the alleged ineffective assistance. The standard for determining whether a guilty plea is constitutionally valid is whether the guilty plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant. *See North Carolina v. Alford*, 400 U.S. 25, 31 (1970). When considering this standard, courts should look to the totality of the circumstances surrounding the guilty plea. *Burket*, 208 F.3d at 190. Where a petitioner "alleges that ineffective assistance of counsel caused the guilty plea itself to be unknowing or involuntary, analysis of such claims must be part of the court's inquiry into the validity of the guilty plea." *United States v. Holbrook*, 613 F. Supp. 2d 745, 761 (W.D. Va. 2009); *see also Fields v. Attorney Gen. of State of Md.*, 956 F.2d 1290, 1296 (4th Cir. 1992) ("A guilty plea does not bar collateral

8

review of allegations of ineffective assistance of counsel in so far as the alleged ineffectiveness bears on the voluntariness of the guilty plea."). However, "in the absence of extraordinary circumstances, the truth of sworn statements made during a Rule 11 colloquy is conclusively established, and a district court should, without holding an evidentiary hearing, dismiss any § 2255 motion that necessarily relies on allegations that contradict the sworn statements." *United States v. Lemaster*, 403 F.3d 216, 221–22 (4th Cir. 2005).

### A. Claim that Counsel Improperly Coerced Allen to Plead Guilty to a Firearms Charge that was not Factually Supported

Allen asserts that Johnson subtly coerced him into signing the plea agreement even though there was no factual basis for the § 924(c)(1)(A) conviction. In the plea agreement, Allen agreed to plead guilty to "carrying a firearm during and in relation to a drug trafficking crime" in violation of 18 U.S.C. § 924(c)(1)(A). (ECF No. 30 at 1). In support of the guilty plea, Allen stipulated to the following facts:

> On September 16, 2017, I possessed approximately 162 grams of methamphetamine. The methamphetamine was hidden inside a void in the center console of my vehicle. … I intended to sell the methamphetamine. While possessing the methamphetamine for distribution purposes, I was also in possession of a firearm. I possessed the firearm for protection while distributing the methamphetamine. I was sitting on the firearm when I was removed from my vehicle.

(*Id.* at 11). At his plea hearing, Allen testified that he understood the plea agreement and knew that the stipulation of facts could be used against him at sentencing and even at trial. (ECF No. 60 at 8). After the Sentencing Court explained what the government would have to prove in order to sustain the firearms charge—including that Allen "knowingly used or carried a firearm" during or in relation to the drug trafficking crime—Allen agreed that he was guilty of the charge. (*Id.* at 11-12). The Court further explained that the phrase

9

"uses a firearm" means the "active employment" of a firearm, while the phrase "carries a firearm" means knowing possession and bearing, movement, conveyance, or transportation of a firearm. (*Id.*). The Sentencing Court asked Allen whether he believed he was guilty of the firearms charge, when considering the explanation of the statute just given. Allen answered in the affirmative without hesitation. When asked to state in his own words what he did that made him guilty of Counts One and Three of the Indictment, Allen stated that, on September 16, 2017: "I had methamphetamines that I was bringing to distribute to someone, and I had a firearm to protect it." (*Id.* at 12).

In addition to Allen's acceptance of guilt based on the Sentencing Court's explanation of the elements of the firearms charge, the United States presented testimony from one of the law enforcement officers that arrested Allen on September 16, 2017. (*Id.* at 15). The officer testified that he found Allen asleep in his car, which was partially parked in the driveway of a residence located on Oak Lane in Huntington, West Virginia. The officer had responded to the location after receiving a call from the homeowner about a man slumped over the steering wheel of a car. Allen was repeatedly asked by the officer to step out of the vehicle, but Allen refused to do so. The officer noted that Allen was not wearing a shirt and had glazed eyes. The officer removed Allen from his vehicle, and when doing so, saw a Glock semi-automatic pistol fall from Allen's seat to the ground. (*Id.* at 16-17). The officer believed Allen must have been sitting on the firearm. When Allen's vehicle was subsequently searched, law enforcement officers found 162 grams of methamphetamine located in a void in the center console. (*Id.* at 17). Other items consistent with drug trafficking were also found in Allen's car.

The facts in this case are undisputed. While sitting in his vehicle on the night of September 16, 2017, Allen possessed a Glock semi-automatic pistol. He, by self-report,

carried that pistol and transported it in his car for protection, because he intended to distribute the 162 grams of methamphetamine found in the center console of his vehicle. Consequently, there was a sufficient factual basis for Allen's guilty plea to Count Three of the Indictment.

Allen's claim that the evidence does not support his guilty plea is simply incorrect and is based upon a fundamental misunderstanding of § 924(c)(1)(A). Title 18 U.S.C. § 924(c)(1)(A) criminalizes the use *or* carrying of a firearm "during and in relation to," a drug trafficking crime, *or* the possession of a firearm "in furtherance of" a drug trafficking crime. Allen was convicted of "carrying" the firearm "in relation to" a drug trafficking crime. "The plain meaning of the term 'carry' as used in § 924(c)(1) requires knowing possession and bearing, movement, conveyance, or transportation of the firearm in some manner." *United States v. Mitchell,* 104 F.3d 649, 653 (4th Cir.1997). A firearm is carried "in relation to" a drug trafficking crime when the firearm has some purpose or effect with respect to the drug trafficking crime and is not present merely by "accident or coincidence." *Smith v. United States*, 508 U.S. 223, 238 (1993). For example, a defendant carries a firearm "during and in relation to" a drug trafficking crime when he has the weapon for protection or intimidation while selling drugs. *Id.* As is plain from the statutory language and accepted definitions, Allen's possession of the Glock pistol in his car for protection while selling methamphetamine satisfies all of the element of a charge pursuant to the "carry" provision of § 924(c)(1)(A).

Allen relies on a decision of the Supreme Court of the United States, *Bailey v. United States,* and a decision of the United States Court of Appeals for the Fourth Circuit, *United States v. Green,* for the proposition that his mere possession of the firearm was insufficient to support a conviction under § 924(c)(1)(A). (ECF No. 67) (citing *Bailey,* 516

11

U.S. 137 ( 1995), and *Green,* 139 F.3d 1002 (4th Cir. 1998)). Although Allen's reading of *Bailey* is not entirely mistaken, it is fatally incomplete. What Allen overlooks is the distinction made in *Bailey* between "using" a firearm and "carrying" a firearm. While *Bailey* makes clear that the mere possession of a firearm is insufficient to prove "use" under § 924(c)(1)(A), Allen pled guilty to "carrying" a firearm, which by its nature both incorporates the element of possession and rejects the need for active employment.

In *Bailey,* the Supreme Court considered the phrase "uses or carries" in § 924(c)(1)(A), concluding that Congress intended for the term "uses" to require active employment of the firearm, while the term "carries" provided an alternative basis for conviction under § 924. *Id*. at 146. As the Supreme Court clarified:

> We assume that Congress used two terms because it intended each term to have a particular, nonsuperfluous meaning. While a broad reading of "use" undermines virtually any function for "carry," a more limited, active interpretation of "use" preserves a meaningful role for "carries" as an alternative basis for a charge. Under the interpretation we enunciate today, a firearm can be used without being carried, *e.g.,* when an offender has a gun on display during a transaction, or barters with a firearm without handling it; and a firearm can be carried without being used, *e.g.,* when an offender keeps a gun hidden in his clothing throughout a drug transaction.

*Id*. Three years later, the Supreme Court reiterated its determination that the terms "uses" and "carries" in § 924(c)(1)(A) are not interchangeable, but have independent meanings, stating:

> "Use" retains the same independent meaning we found for it in *Bailey,* where we provided examples involving the displaying or the bartering of a gun. *Ibid.* "Carry" also retains an independent meaning, for, under *Bailey,* carrying a gun in a car does not necessarily involve the gun's "active employment." More importantly, having construed "use" narrowly in *Bailey,* we cannot also construe "carry" narrowly without undercutting the statute's basic objective. For the narrow interpretation would remove the act of carrying a gun in a car entirely from the statute's reach, leaving a gap in coverage that we do not believe Congress intended.

*Muscarello v. United States*, 524 U.S. 125, 136–37 (1998). In *Muscarello,* the Supreme

12

Court was asked to decide whether the phrase "carries a firearm" is limited to the carrying of firearms on the person, or whether it applies more broadly to include a person who "knowingly possesses and conveys firearms in a vehicle, including in the locked glove compartment or trunk of a car, which the person accompanies." *Id.* at 126-27. The Court concluded that the broader interpretation reflected congressional intent. Given this Supreme Court precedent, Allen does not assert a valid claim based on *Bailey*.

Allen's reliance on *United States v. Green, supra,* is similarly misplaced. The Fourth Circuit examined in *Green* whether double jeopardy prevented the government from reindicting a defendant on a charge to which he had pled guilty under a plea agreement and then later successfully challenged with a § 2255 motion. Like *Bailey,* the *Green* case involved a conviction under § 924(c)(1)(A) for the use of a firearm. In light of the *Bailey* decision, the defendant filed a § 2255 motion, stating that his plea was invalid, because the evidence did not support a finding that the defendant had actively employed his weapon. After the motion was granted, the government reindicted the defendant on the same firearms charge, causing the defendant to move to dismiss the reindictment on double jeopardy grounds. The Fourth Circuit held that the government could reindict the defendant without running afoul of the Double Jeopardy Clause.

The decision in *Green* is plainly inapplicable to Allen's case. The Fourth Circuit did not address in *Green* the evidentiary support needed to sustain a "carrying" charge under §924(c)(1)(A). To the contrary, the Fourth Circuit examined only the narrow question of whether defendant Green could be reindicted on a charge to which he had earlier pleaded guilty and later had set aside on the basis of alleged trial court error.

Given that a factual basis clearly existed for Allen's guilty plea, his criticism of Johnson is unfounded. Johnson correctly advised Allen regarding Count Three of the

13

Indictment and prevented Allen from receiving a harsher sentence that was likely to accompany a section 851 information. *Carillo-Morales v. United States,* 952 F.Supp.2d 797, 804 (E.D. Va. 2013) (finding that "attorney acted reasonably by advising his client of the alternatives to the government's offer and the likelihood of success if [client] decided to proceed with trial."). Therefore, the undersigned **FINDS** that Allen fails to meet the first prong of the *Strickland* test, rendering his challenge on this ground to be without merit.

### B.  Counsel was Ineffective for Failing to File a Suppression Motion

Allen alleges in his amendment that Johnson was ineffective for failing to file a motion to suppress evidence. Although Allen does not extrapolate on this claim, he presumably refers to the evidence obtained secondary to his arrest on September 16, 2017. Even assuming that a motion to suppress would have been successful, which is unlikely given the facts surrounding Allen's arrest, his challenge on this ground is unavailing.

At the plea hearing, Johnson advised the Sentencing Court that he questioned "the propriety" of Allen's arrest, but added that he had discussed this issue with Allen, who wished "to forgo making that challenge and enter this plea." (ECF No. 60 at 19). Upon hearing Johnson's statements, the Sentencing Court inquired of Allen, asking him: "Do you understand by entering this plea under these terms, you are giving up any claim you might have that the officer acted improperly in seizing you and arresting you?" Allen acknowledged his understanding and confirmed his desire to go forward with a guilty plea. (*Id.* at 20).

The law is well settled that, by entering a voluntary and intelligent guilty plea, a defendant waives his right to challenge all nonjurisdictional defects, including "the deprivation of constitutional rights that occurred prior to the entry of the guilty plea."

14

*Tollett v. Henderson,* 411 U.S. 258, 267 (1973). "The longstanding test for determining the validity of a guilty plea is 'whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant.'" *Hill,* 474 U.S. at 56 (quoting *Alford,* 400 U.S. at 31). A guilty plea is valid if the defendant knowingly, voluntarily, and intelligently pleads guilty "with sufficient awareness of the relevant circumstances and likely consequences." *United States v. Drawdy*, 809 F. App'x 162, 163 (4th Cir. 2020) (quoting *United States v. Fisher*, 711 F.3d 460, 464 (4th Cir. 2013)).

Federal Rule of Criminal Procedure 11 governs the validity of guilty pleas. The purpose of the Rule 11 plea colloquy is to ensure that the plea of guilty is entered into knowingly and voluntarily. *See United States v. Vonn,* 535 U.S. 55, 58 (2002). Because the Rule 11 hearing provides the best evidence of a criminal defendant's understanding and acceptance of the plea and its consequences, when assessing the voluntary and intelligent nature of a guilty plea on a § 2255 motion, the reviewing court necessarily allocates substantial weight to the Rule 11 colloquy. As noted above, statements made during the hearing to accept a guilty plea are presumed to be true and subsequent attacks that contradict those statements may generally be dismissed as frivolous. *Lemaster,* 403 F.3d at 222.

Here, the Sentencing Court confirmed through a thorough plea colloquy that Allen fully understood the consequences of pleading guilty. Moreover, the Sentencing Court expressly confirmed that Allen agreed to waive his constitutional rights; specifically including his right to challenge his arrest, which directly led to the collection of the evidence against him. (ECF No. 60 at 20). Allen verified that he was entering into the plea agreement voluntarily and of his own free will. (*Id.* at 27). He stated that he believed a guilty plea was in his own best interest, and he realized that the final decision to plead

guilty was entirely up to him. (*Id.* at 28).

Allen's statements at the plea hearing, which were made under oath and after a finding by the Sentencing Court that Allen was competent, demonstrate that Allen and his counsel discussed the benefits and detriments of entering a guilty plea—particularly, that entering the plea would preclude Allen's right to challenge the propriety of his arrest. Allen nonetheless decided that a guilty plea was the best alternative for him, and he did so of his own free will. "The quality of counsel's performance is irrelevant if it had no direct and significant impact on [Movant's] decision to plead guilty." *Huddleston v. United States*, No. 3:10-CR-00042, 2012 WL 5949369, at *14 (S.D.W. Va. Aug. 29, 2012), *report and recommendation adopted,* No. CIV.A. 3:11-00403, 2012 WL 5954247 (S.D.W. Va. Nov. 28, 2012). Allen decided to waive his right to challenge the evidence, as well as all of the other rights reviewed by the Sentencing Court. Accordingly, the undersigned **FINDS** that this claim by Allen does not satisfy either prong of the *Strickland* test.

### IV. Proposal and Recommendations

For the aforementioned reasons, the undersigned respectfully **PROPOSES** that the District Court confirm and accept the foregoing findings and **RECOMMENDS** that the Movant's Motion and Amended Motions to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. § 2255, (ECF Nos. 50, 72, 74), be **DENIED**, and that this civil action be **DISMISSED** and removed from the docket of the Court.

The parties are notified that this "Proposed Findings and Recommendations" is hereby **FILED**, and a copy will be submitted to the Honorable Robert C. Chambers, United States District Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, the parties shall have fourteen days (filing of objections) and three days (if received by mail)

from the date of filing this "Proposed Findings and Recommendations" within which to file with the Clerk of this Court, specific written objections, identifying the portions of the "Proposed Findings and Recommendations" to which objection is made and the basis of such objection. Extension of this deadline may be granted by the presiding District Judge for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. *Snyder v. Ridenour*, 889 F.2d 1363 (4th Cir. 1989); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984). Copies of such objections shall be provided to the opposing parties, Judge Chambers, and Magistrate Judge Eifert.

The Clerk is instructed to provide a copy of this "Proposed Findings and Recommendations" to Movant and Respondent.

**FILED:** August 14, 2020

_____
Cheryl A. Eifert
United States Magistrate Judge